```
              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION AT LEXINGTON**

```
ROBERT   LANGLEY,   MOUNTAINEER   )
DEVELOPMENT COMPANY, LTD,         )
COLONY CROSSING, LLC, and         )   Civil Action No. 07-cv-404-JMH
LANGLEY-COLONIAL, LLC,            )
                                  )
     Plaintiffs,                  )   MEMORANDUM OPINION AND ORDER
                                  )
v.                                )
                                  )
PRUDENTIAL MORTGAGE CAPITAL       )
COMPANY, LLC, and NATIONAL CITY   )
BANK,                             )
                                  )
     Defendants.                  )
                                  )
```

                    **    **    **    **    **

This matter is before the Court on Plaintiff's motion for preliminary injunction [Record No. 2]. The Court reviewed Defendant's response in opposition to the motion and heard oral arguments on December 6, 2007. The Court will grant the preliminary injunction for the reasons discussed below.

### I. Factual Background

On June 6, 2007, Robert Langley ("Langley") applied for a $43,300,000 loan from Prudential Mortgage Capital Company, LLC ("Prudential"), to finance The Pinnacle at Craft Farms project in Gulf Shores, Alabama (the "Craft Farm loan"). In connection with the Craft Farm loan, Langley entered into a Rate Lock Agreement with Prudential, under which the interest rate on the Craft Farm loan was locked at 6.36%. The interest rate was derived from a Treasury Yield of 5.12% and an Interest Rate Spread of 1.24%, for

a total of 6.36%.

In order to obtain the Craft Farm loan at the locked interest rate, Langley was required to make a Rate Lock Deposit in favor of Prudential in the amount of $860,000.  The Rate Lock Deposit could be increased during the term of the Rate Lock Agreement such that at all times Langley was required to have on deposit for Prudential an amount equal to twice the Potential Unwind Costs.

On June 25, 2007, Langley made application for a $13,800,000 loan from Prudential to purchase property in Madison, Mississippi, known as Colony Crossing (the "Colony Crossing loan").  Langley contemporaneously entered into a Rate Lock Agreement which locked the interest rate on the Colony Crossing loan at 6.30%.  The locked interest rate of 6.30% was derived from a Treasury Yield of 5.08% and an Interest Rate Spread of 1.22%.  The initial Rate Lock Deposit on the Colony Crossing Rate Lock Agreement was $276,000. Like with the Craft Farms Rate Lock Agreement, Langley was required to have on deposit for Prudential an amount equal to twice the Potential Unwind Costs of the Colony Crossing transaction.  The Rate Lock deposits on both the Craft Farms and Colony Crossings loans were provided in the form of irrevocable letters of credit from National City Bank, with Prudential named as the beneficiary. In the sense that the letters of credit were to serve as collateral, not payment for the loans, the letters of credit were considered standby letters of credit.

After the Rate Lock Agreements were finalized, Prudential advised Langley in July or August of 2007 that it would not honor the locked interest rates as stated in the Craft Farms and Colony Crossings Rate Lock Agreements. Plaintiffs were informed that only one component of the interest rate was locked, such that the interest rate could vary. Based on the language of the Rate Lock Agreements, Plaintiffs believed all elements of the interest rates were fixed in both loans.

Despite having previously stated that it would not honor the locked interest rate, on August 20, 2007, Prudential informed Langley that the Rate Lock Deposit on the Colony Crossing loan required an increase of $121,379.28. Langley increased the deposit by providing a letter of credit in that amount from National City Bank. The following day, August 21, 2007, Prudential informed Langley of the need to increase the Rate Lock Deposit on the Craft Farms loan by $514,802.36. Langley again provided the increased deposit in the form of a letter of credit from National City Bank. Thereafter, Langley was required to terminate the Colony Crossing transaction because the purchase was not feasible at the increased rate of 6.90%.

On November 27, 2007, Prudential again informed Langley that the Rate Lock Deposit on the Craft Farms transaction must be increased, this time by $2,596,505.64. Langley refused to increase the deposit. The following day, November 28, 2007, Langley

received a letter from Prudential stating that his decision to terminate the Colony Crossing transaction was a Unwind Event under the Rate Lock Agreement and demanded payment in the amount of $1,304,307. Langley received another letter from Prudential on November 30, 2007, which explained that his refusal to increase the Rate Lock Deposit on the Craft Farms transaction was a Unwind Event, and demanded payment of $4,196,421.50. Prudential has presented sight drafts to National City Bank seeking payment under the letters of credit in the sum of $2,076,181.50. It is Plaintiffs' argument that because they received nothing in return for the sums demanded by Prudential and because Prudential "repudiated the very essence of the Rate Lock Agreements when it refused to honor the Locked Loan Rates," that the injunction should issue.

## II. Motion for Preliminary Injunction

As a preliminary matter, the Court must address Prudential's assertion the pursuant to the Rate Lock Agreement, any disputes arising from the Rate Lock Agreements "shall be governed by the substantive law of the State of New York" and that any litigation arising out of the Rate Lock Agreements "shall be brought only in a state or federal court sitting in New York County in the State of New York." Plaintiffs contend that as there was no meeting of the minds regarding the Rate Lock Agreements, the choice of law and forum selection clauses to do not control this litigation, a

4

contention with which this Court agrees. Accordingly, this Court is a proper forum for this litigation, which shall be governed by the substantive law of the Commonwealth of Kentucky.

By motion, Plaintiffs seek a preliminary injunction enjoining Prudential from presenting any further sight drafts to National City Bank in regards to the subject standby letters of credit. Plaintiffs also seek an injunction enjoining National City Bank from issuing payment to Prudential under the subject standby letters of credit.

The purpose of a preliminary injunction is to preserve the status quo. *U.S. v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). The factors to be balanced in determining whether to issue a preliminary injunction include:

> 1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction.

*Id.*

### A. Strong Likelihood of Success on the Merits

Kentucky's Uniform Commercial Code recognizes that a court of competent jurisdiction may enjoin the honoring of a letter of credit. KRS 355.5-109(2) provides that:

> If an applicant claims that a required document is forged or materially fraudulent or that honor of the

>presentation would facilitate a material fraud by the beneficiary on the issuer or applicant, a court of competent jurisdiction may temporarily or permanently enjoin the issuer from honoring a presentation or grant similar relief against the issuer or other persons only if the court finds that:
>
>(a) The relief is not prohibited under the law applicable to an accepted draft or deferred obligation incurred by the issuer;
>
>(b) A beneficiary, issuer, or nominated person who may be adversely affected is adequately protected against loss that it may suffer because the relief is granted;
>
>(c) All of the conditions to entitle a person to the relief under the law of this Commonwealth have been met; and
>
>(d) On the basis of the information submitted to the court, the applicant is more likely than not to succeed under its claim of forgery or material fraud and the person demanding honor does not qualify for protection under subsection (1)(a) of this section.

KRS § 355.5-109(2). In *Audio Sys., Inc. v. First Nat'l Bank of Louisville, et al.*, 753 S.W.2d 553, 555 (Ky. Ct. App. 1988), the Kentucky Court of Appeals recognized that honoring a letter of credit may be enjoined if there is fraud in the transaction, but only in limited circumstances. *Id.* ("The circumstances which will justify an injunction against honor [of a letter of credit] must be narrowly limited to situations of fraud in which the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purpose of the independence of the issuer's obligation would no longer be served.") (*citing Dynamics Corp. of Am. v. Citizens and Southern Nat'l Bank*, 356 F.Supp. 991, 996

(N.D.Ga.1973)).

Plaintiffs argue that because they were inclined to enter into the loan transactions based on their ability to lock the interest rates, Prudential's subsequent refusal to honor the locked interest rates constitutes a fraudulent transaction.  To demonstrate its entitlement to draw upon the standby letters of credit at issue, Prudential argues that the loan applications clearly set forth that the interest rates were subject to change.  Prudential relies on the section of the loan applications entitled "No Material Adverse Change" to further its argument that the disruption in the capital markets which occurred on or about July of 2007 allowed for the change in interest rate.  Said section provides in pertinent part:

> Except as expressly provided herein, PMCC [Prudential] shall be under no obligation to make the Loan and PMCC's determination to close and fund the Loan shall be subject to PMCC's sole determination that there have been no material adverse change to (or disruption in): (a) financial, banking, loan syndication, securitization, or capital markets.

What Prudential fails to address is the "Early Rate Lock" provision of the loan application, which must be read in connection with "No Material Adverse Change" provision, according to "except as expressly provided herein" language of the "No Material Adverse Change" provision.  The "Early Rate Lock" provision states:

> In Lender's discretion, Borrower may lock the Interest Rate after entering into an acceptable rate lock agreement with Lender (a "<u>Rate Lock Agreement</u>"), which will provide, among other things, for a rate lock deposit equal to two percent (2%) of the proposed Loan Amount.

7

> The rate lock deposit is refundable if the proposed Loan Amount is fully funded at closing. This paragraph shall survive the expiration or earlier termination of this Application and, if issued, any loan commitment relating to the Loan.

Plaintiffs took advantage of the Early Rate Lock option by entering into a Rate Lock Agreement and locking the interest rates for Craft Farms and Colony Crossing at 6.36% and 6.30%, respectively, as evidenced by the Rate Lock Agreements.

By entering into the Rate Lock Agreements and providing the rate lock deposits, Plaintiffs believed, and logically so, that they were locking the interest rates on the loans. Plaintiffs were aware of the "No Material Adverse Change" provisions in the loan applications, but considered the Rate Lock Agreements to remove any risk that adverse changes in the capital markets could affect the interest rates on the loans. This Court agrees.

Prudential seeks to draw upon the letters of credit to satisfy the "Unwind Costs," as defined on page three of the Rate Lock Agreements. Defendants are not entitled to Unwind Costs, as they – not Plaintiffs – terminated the Rate Lock Agreements. On page ten on Prudential's brief, Prudential states: "PMCC informed Plaintiffs that PMCC would not make the Proposed Loans in accordance with the Loan Applications." Prudential admits it informed Plaintiffs it would not proceed with the Craft Farms and Colony Crossing loans as provided in the loan applications, which were subject to the Rate Lock Agreements.

8

Robert Langley conveyed to Prudential that the financial feasibility of the loans was largely dependent on the interest rates, which is exactly why he opted to enter into the Rate Lock Agreements, as provided for in the loan applications' "Early Rate Lock" provisions, and posted the rate lock deposits in the form of standby letters of credit. For Prudential to then claim the interest rate was not locked smacks of fraud. When Prudential communicated to Plaintiffs its intention to not honor the loans as contemplated by the loan applications and Rate Lock Agreements, the Rate Lock agreements were no longer viable; thus, Prudential was not entitled to the Unwind Costs as defined in the Rate Lock Agreements.

Plaintiffs have demonstrated a likelihood of success on the merits in that they have explained how Prudential engaged in a fraudulent transaction by agreeing upon interest rates with Plaintiffs but subsequently refusing to honor those rates.

**B.   Irreparable Harm**

Plaintiffs argue they will suffer irreparable harm in the form of damaged business reputations and goodwill if payment is made to Prudential on the standby letters of credit. Plaintiffs contend that because "a payment demand on a standby letter [of credit] is a strong indication that something is seriously wrong," *Western Security Bank, N.A. v. The Superior Court of Los Angeles County*, 45 Cal. Rptr.2d 664, 678 (Cal. App. 1995), *superseded by statute on*

9

*other grounds*, payment on the standby letters of credit will cause irreparable harm to Plaintiffs' business reputations and goodwill.

In *Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992), the Court recognized that loss of goodwill constitutes immeasurable damage for which there is no adequate remedy at law. *Id.* at 512 ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.")(citing *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)). Plaintiffs' real estate development business requires that they maintain exemplary reputations with the lenders who agree to finance the multi-million dollar real estate projects into which they endeavor. Plaintiffs stand to suffer a loss of goodwill and reputation in the eyes of the lenders who are essential to Plaintiffs' business if the standby letters of credit are called upon for payment.

    C.    **No Substantial Harm to Others if Injunction Were Issued**

There would be no substantial harm to others if the requested injunction were issued. Prudential itself will not even be harmed by the injunction, because issuance of the injunction will only serve to maintain the status quo - the letters will remain outstanding with National City Bank - until the matter is decided on the merits.

    D.    **Public Interest Served by Issuance of Injunction**

The Court finds that the public interest will be served by the

issuance of the injunction by discouraging bad faith business dealings.

### III. Attorney Fees

The Court notes Plaintiffs' request for an award of attorney fees incurred in obtaining the preliminary injunction, but declines to award such fees at this time.

### IV. Conclusion

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for preliminary injunction [Record No. 2] be, and the same hereby is, **GRANTED** as follows:

1) That Defendant National City Bank, its directors, officers, agents, servants, employees, affiliates and attorneys, and those persons in active concert or participation with them, who receive actual notice, be enjoined from honoring Prudential Mortgage Capital Company, LLC's sight drafts or allowing Prudential Mortgage Capital Company, LLC to draw upon the following irrevocable, standby letters of credit guaranteed by Plaintiffs Robert Langley: Irrevocable Standby Letter of Credit No. SCL013800 in the amount of $365,000; Irrevocable Standby Letter of Credit No. SCL013998 in the amount of $121,379.28; Irrevocable Standby Letter of Credit No. SCL013758 in the amount of $860,000; Irrevocable Standby Letter No. SCL013759 in the amount of $215,000; and Irrevocable Standby Letter

of Credit No. 013999 in the amount of $514,802.36; and

    2. Defendant Prudential Mortgage Capital Company, LLC, its directors, officers, agents, servants, employees, affiliates and attorneys, and those persons in active concert or participation with them, who receive actual notice, be enjoined from presenting any further sight drafts to Defendant National City Bank or requesting payment or the ability to draw upon the following irrevocable, stand-by letters of credit guaranteed by Plaintiffs Robert Langley: Irrevocable Standby Letter of Credit No. SCL013800 in the amount of $365,000; Irrevocable Standby Letter of Credit No. SCL013998 in the amount of $121,379.28; Irrevocable Standby Letter of Credit No. SCL013758 in the amount of $860,000; Irrevocable Standby Letter No. SCL013759 in the amount of $215,000; and Irrevocable Standby Letter of Credit No. 013999 in the amount of $514,802.36.

    This the 12th day of December, 2007.



**Signed By:**
*Joseph M. Hood*
**Senior U.S. District Judge**